UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>                Plaintiff,<br><br>      v.<br><br>YOUR COMFORT ZONE, INC., and ROSALIND GODFREY,<br><br>                Defendants. | Civil Action No. 1:22-cv-414<br><br>October 14, 2022<br><br>**Injunctive relief requested** |

## **COMPLAINT**

This is a case that involves employers who have engaged in a pattern of retaliation against employees in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). The Wage and Hour Division of the United States Department of Labor (the "WHD") found in two prior investigations that Defendants' employees were due unpaid overtime compensation under the FLSA. In the wake of that finding, Defendants Your Comfort Zone, Inc. and Rosalind Godfrey influenced employees to "kick back" or return to Defendants the wages that the employees were owed. These coercive tactics succeeded, as multiple employees returned to Defendants back wages that the workers had rightfully earned.

Now that the WHD is conducting its third investigation into Defendants' compliance with the FLSA, Defendants are once again discouraging employees from asserting their rights by, among other things, inquiring into their conversations with the WHD's investigator and following and intimidating a worker because of the worker's perceived cooperation with the WHD. In addition, Defendants have begun interfering with this third investigation in a new way—by falsifying records that they are providing to the WHD.

1

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor (the "Secretary") therefore seeks from this Court an order permanently enjoining Defendants and those acting on their behalf from violating the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), and the recordkeeping-related provisions of the FLSA, 29 U.S.C. §§ 211(c) and 215(a)(5). The Secretary also seeks: (1) to recover the money that Defendants unlawfully coerced their employees to return after the WHD's first investigation; and (2) punitive damages for Defendants' repeated retaliation against their employees.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in the United States District Court for the District of New Hampshire because a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Parties

3. Plaintiff Martin J. Walsh, Secretary of Labor, Department of Labor, is authorized to bring actions to restrain violations of the anti-retaliation provision, recordkeeping provisions, and other provisions of the FLSA. *See* 29 U.S.C. §§ 211(a), 216(b), 216(c), and 217. The Secretary is the proper plaintiff in this case.

### Defendant Your Comfort Zone, Inc.

4. Defendant Your Comfort Zone, Inc. ("Comfort Zone") is a New Hampshire corporation with a principal office located at 8 Batchelder Avenue, West Lebanon, NH 03784.

5. Comfort Zone is in the business of providing home health care services.

6. At all relevant times, Comfort Zone employed employees, including those who worked as home care workers.

7. At all relevant times, Comfort Zone set its employees' method and amount of pay, created policies for employee compensation, and maintained employment-related records.

8. At all relevant times, Comfort Zone set the hours worked by its employees, supervised employees' work, and had the power to hire and fire them.

### Defendant Rosalind Godfrey

9. Defendant Rosalind Godfrey is, and at all relevant times was, the president and director of Comfort Zone.

10. Godfrey resides in New Hampshire, within the jurisdiction of this Court.

11. At all relevant times, Godfrey had the authority to and did control the day-to-day operations of Comfort Zone.

12. At all relevant times, Godfrey set Comfort Zone's employees' method and amount of pay, created policies for employee compensation, and maintained employment-related records.

13. At all relevant times, Godfrey set the hours worked by Comfort Zone's employees and had the power to hire and fire them.

14. Godfrey has acted directly and indirectly in the interest of Comfort Zone in relation to its employees, and therefore has been an employer of Comfort Zone's employees within the meaning of the FLSA, *see* 29 U.S.C. § 203(d).

**Defendants and Their Employees Are Covered by the FLSA**

15. At all relevant times, Defendants were an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as they engaged in related activities performed through unified operation or common control for a common business purpose.

16. From at least February 14, 2016 to the present, Defendants have employed employees in said enterprise.

17. At all relevant times, Defendants' enterprise has been engaged in commerce or in the production of goods for commerce, which includes having employees handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, including cleaning products.

18. From 2015 through 2017, and from 2019 through 2021, Defendants' enterprise had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

19. Based on existing information, in 2018 Defendants' enterprise had an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

20. Defendants' employees therefore have been employed in this enterprise engaged in commerce or in the production of goods for commerce, within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

21. Because Defendants' employees worked as home care workers they are also covered by the FLSA under 29 U.S.C. § 202(a).

## The Secretary's Prior Investigations of Defendants

22. In or around January 2018, on behalf of the Secretary, the WHD began an investigation into the wage and hour practices of Comfort Zone and Godfrey (the "First Investigation").

23. The First Investigation covered the time period from February 14, 2016 to February 4, 2018.

24. In the course of the First Investigation, the WHD determined that Defendants had violated Section 7 of the FLSA, 29 U.S.C. § 207, relating to overtime compensation for employees, and Section 11(c) of the FLSA, 29 U.S.C. § 211(c), relating to the keeping of accurate and complete records.

25. The WHD determined that Defendants owed certain employees back wages for the time period covered by the First Investigation.

26. On or about June 8, 2018, Godfrey signed a Form WH-56, which is a form that set out the WHD's calculation of back wages owed, and agreed in writing to pay to Defendants' affected current and former employees a total of $70,252.97 in back wages for the FLSA violations during the time period of the First Investigation (the "First Agreement").

27. In resolving the findings of the WHD's First Investigation, Defendants represented to the Secretary that they would comply with the FLSA going forward.

28. During the course of the First Investigation, Defendants also executed a statute of limitations tolling agreement with the Secretary, in which Defendants agreed that the time period beginning on February 7, 2018 would not be included in computing the running of any statute of limitations and that they would not raise the tolling period in any defense concerning the timeliness of any legal proceedings brought by the Secretary against Defendants.

29. In addition, Godfrey submitted to the WHD signed certifications regarding payments made to certain employees pursuant to the First Agreement. Those certifications stated that each employee had been paid "in full," that Godfrey had not and would not retaliate against the employee for accepting the payment, and that Godfrey had not and would not ask the employee to return all or part of the payment to Godfrey.

30. In or around September 2018, the WHD began a second investigation into the wage and hour practices of Comfort Zone and Godfrey (the "Second Investigation").

31. The Second Investigation covered the time period from February 5, 2018 to September 30, 2018.

32. In the course of the Second Investigation, the WHD determined that Defendants had violated Section 7 of the FLSA, 29 U.S.C. § 207, relating to overtime compensation for employees, and Section 11(c) of the FLSA, 29 U.S.C. § 211(c), relating to the keeping of accurate and complete records.

33. The WHD determined that Defendants owed certain employees back wages for the time period covered by the Second Investigation.

34. On or about November 18, 2018, Godfrey signed a Form WH-56, which is a form that set out the WHD's calculation of back wages owed, and agreed in writing to pay to Defendants' affected current and former employees a total of $29,802.18 in back wages for the FLSA violations during the time period of the Second Investigation (the "Second Agreement").

35. Once again, in resolving the findings of the WHD's Second Investigation, Defendants represented to the Secretary that they would comply with the FLSA going forward.

## Defendants' Retaliation in Seeking Kickbacks from Employees

36. Following the First Investigation and the Second Investigation by the WHD, Defendants used manipulative tactics to try to get employees to "kick back" or return the back wages that they were owed, in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3).

37. In or around 2018, after the First Investigation and First Agreement, Defendants took actions to convince employees to return the back wages that they were owed.

38. Examples of Defendants' actions in this regard include the following:

   a. Godfrey told multiple employees that other workers were returning the back wages.

   b. Godfrey stated that it would be like stealing to keep the check for back wages.

   c. Godfrey stated that an employee's conscience would need to dictate their decision of whether to keep the back wages.

   d. When some employees informed Godfrey that they were going to keep the back wages, Godfrey became very upset.

   e. When employee Datlene Bowen asked Godfrey why Bowen was receiving the check for back wages, Godfrey said that Godfrey did not know.

   f. Godfrey then told Bowen that if Bowen did not want the check, Bowen could return the check to Godfrey.

   g. Bowen in fact returned the back wage check to Godfrey.

39. Thus, in or around 2018 at least one employee returned to Defendants back wages that they were owed from the First Investigation and First Agreement.

40. Then, in or around early 2019, after the Second Investigation and Second Agreement, Defendants took actions to convince employees to return the back wages that they were owed.

41. Examples of Defendants' actions in this regard include the following:

   a. Godfrey told employee Jeannie Ayer that Ayer had already been paid the money once and that it was not fair that Ayer was being paid the money again.

   b. Godfrey told Ayer that Ayer should cash the check but not keep the money.

   c. Godfrey also complained to Ayer that other employees were taking Godfrey's money and that the Department of Labor was giving away Godfrey's money.

   d. Ayer agreed to return the back wages to Godfrey.

   e. Godfrey had Ayer cash the back wage check and put the cash in a plain white envelope.

   f. Godfrey then provided directions to and had Ayer meet Godfrey at a Dunkin Donuts.

   g. Godfrey did not speak about the money while the two were at the Dunkin Donuts, but motioned for Ayer to remain quiet and put the cash envelope in Godfrey's hand, which Ayer did.

   h. Godfrey showed up at a client's house where Bowen was working, had Bowen sign the check for back wages, and then deposited the check into Bowen's account while Bowen was still working.

   i. Another employee provided Bowen with an envelope that Bowen was expected to use to return the cash from Bowen's account to Defendants.

42. Thus, in or around early 2019, at least one employee returned to Defendants back wages that they were owed from the Second Investigation and Second Agreement.

### The Secretary's Current Investigation of Defendants

43. In September 2022, the WHD began a third investigation into Defendants' wage and hour practices and their compliance with the FLSA (the "Current Investigation").

44. On or about September 15, 2022, the WHD informed Defendants of the Current Investigation.

45. The WHD's Current Investigation of Defendants is ongoing.

46. The WHD's investigator has interviewed certain of Defendants' current and former employees and intends to try to interview additional employees in the course of the Current Investigation.

### Defendants' Retaliatory and Obstructive Efforts During the Current Investigation

47. After Defendants were informed of the Current Investigation, Defendants renewed their attempts to discourage employees from asserting their rights under the FLSA.

48. For example, in September 2022, Godfrey had conversations with employees in which Godfrey:

   a. Asked about any contact by the WHD's investigator;

   b. Stated that if an employee were contacted by the WHD's investigator, they should give Godfrey information about what the investigator asked and what the employee told the investigator; and

   c. Instructed at least one employee that they do not have to speak with the Department of Labor.

49. In or around mid-September 2022, after Godfrey was informed of the Current Investigation, Godfrey asked employees to sign and back-date certain documents concerning their employment with Defendants.

50. Defendants altered at least one employee's timesheet for a particular workweek.

51. On or about September 19, 2022, Defendants provided to the WHD's investigator a timesheet purporting to show then-current employee Cheyenne Wrigley's hours worked during the pay period from August 15, 2022 to August 28, 2022.

52. Neither the writing in the column reflecting Wrigley's work start and end times nor the signature on the timesheet matches Wrigley's handwriting.

53. The hours included on the purported timesheet did not align with Wrigley's actual hours worked during the pay period or the timesheet that Wrigley had filled out and submitted to Godfrey.

54. Defendants also took actions to intimidate Wrigley after Wrigley cooperated with the WHD's Current Investigation.

55. On or about September 15, 2022 and on or about September 21, 2022, Wrigley provided statements to the Secretary in the course of the Current Investigation.

56. Then, on or about September 21, 2022, Wrigley gave Defendants notice of Wrigley's resignation.

57. On or about September 21, 2022, Godfrey followed Wrigley to the worksite where Wrigley was working that evening for another employer.

58. When Wrigley saw Godfrey outside the worksite, Wrigley called a supervisor for assistance.

59. The supervisor then sent a colleague to walk with Wrigley into the worksite.

60. On or about September 21, 2022, Godfrey also sent Wrigley a text message that stated: "I'm saddened that you decided to turn on me. And sorry you left. You knew your pay & I would have made things right if I did something wrong."

61. On or about September 22, 2022, Godfrey sent Wrigley an email message that stated in part: "Sorry you decided to depart but please, don't make things up all of a sudden. . . . [P]lease don't go say nasty things about me."

## COUNT ONE
**(Violation of the Anti-Retaliation Provision of the FLSA, 29 U.S.C. § 215(a)(3))**

62. The Secretary incorporates by reference and re-alleges all foregoing allegations in the Complaint.

63. Section 15(a)(3) prohibits retaliation against employees and former employees because they assert their rights under the FLSA. The provision prohibits, among other things, "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter [8 of the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3).

64. Defendants have violated Section 15(a)(3) by trying to persuade at least one employee to kick back or return compensation that the WHD had determined the employee was owed during the First Investigation.

65. Defendants have violated Section 15(a)(3) by asking at least one employee to report on their communications with the WHD's investigator during the Current Investigation and telling at least one employee that they do not need to speak with the WHD's investigator.

66. Defendants have violated Section 15(a)(3) by following at least one employee and accusing the employee of "turn[ing] on" them after that employee made a statement to the WHD in the course of the Current Investigation.

67. Defendants have violated Section 15(a)(3) by falsifying the time records of at least one employee who had testified and was about to testify in the Current Investigation.

68. As a result of Defendants' retaliatory conduct, a reasonable employee would be dissuaded from engaging in activities protected under the FLSA, such as asserting their right to receive proper compensation or cooperating with an investigation by the Secretary into violations of the FLSA.

## COUNT TWO
**(Violations of Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207(a) and 215(a)(2))**

69. The Secretary incorporates by reference and re-alleges all foregoing allegations in the Complaint.

70. Defendants' coercive tactics have caused at least one employee to return to Defendants portions of the compensation they are owed from the First Investigation and First Agreement.

71. Thus, at least one employee has not received all of the overtime compensation that they are owed for the time period covered by the First Investigation.

72. Under Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), Defendants are liable for the amount of unpaid overtime compensation that is still owed to their employees for the time period covered by the First Investigation.

73. Defendants' actions have been willful. As set forth above, Defendants have manipulated employees in an effort to make them kick back or return the compensation that those employees are owed.

## COUNT THREE
## (Violations of Sections 11(c) and 15(a)(5) of the FLSA, 29 U.S.C. §§ 211(c) and 215(a)(5))

74. The Secretary incorporates by reference and re-alleges all foregoing allegations in the Complaint.

75. Defendants have violated Sections 11(c) and 15(a)(5) of the FLSA, 29 U.S.C. §§ 211(c) and 215(a)(5), by altering and manipulating at least one employee's time records and providing such false records to the Secretary in the course of the WHD's Current Investigation.

## PRAYER FOR RELIEF

WHEREFORE, cause having been shown, the Secretary respectfully prays that this Court enter judgment against Defendants and provide the following relief:

a. An order issued pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from violating the provisions of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), by taking any adverse action or threatening to take any adverse action against any current or former employee because that employee engaged in activity protected by the FLSA;

b. An order issued pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from violating Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2);

c. An order issued pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from violating Sections 11(c) and 15(a)(5) of the statute, 29 U.S.C. §§ 211(c) and 215(a)(5);

   d.  An order awarding damages to Defendants' current and former employees in the amounts of the back wages due to them for the time period of the First Investigation that the employees "kicked back" or returned to Defendants as a result of Defendants' retaliation in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3); or in the alternative, an order issued pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with Defendants, from withholding the payment of any back wages due to Defendants' employees for the time period of the First Investigation;

   e.  An order awarding punitive damages for Defendants' retaliation against certain current and former employees in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3);

   f.  An order awarding the Secretary all costs of this action; and

   g.  An order awarding the Secretary with any other relief that the Court deems necessary and appropriate.

| | |
|---|---|
| Post Office Address: | Seema Nanda<br>Solicitor of Labor |
| U.S. Department of Labor<br>Office of the Solicitor<br>John F. Kennedy Federal Building<br>Room E-375<br>Boston, MA 02203<br>TEL: (617) 565-2500<br>FAX: (617) 565-2142 | Maia S. Fisher<br>Regional Solicitor<br><br>Mark A. Pedulla<br>Wage and Hour Counsel |
| | /s/ Emily V. Wilkinson<br>Emily V. Wilkinson<br>Trial Attorney |
| Date: October 14, 2022 | wilkinson.emily.v@dol.gov<br>MA BBO No. 699512 |
| | U.S. Department of Labor<br>Attorneys for Plaintiff |